UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X

ANTHONY AVOLA and JOSEPHINE     :
AVOLA,     :    Civ. Action No.: 11-cv-4053
        Plaintiff     :
    :
      v.     :
    :
LOUISIANA-PACIFIC    CORPORATION,   :
THE HOME DEPOT U.S.A., INC., and THE   :
HOME DEPOT STORE #1202,     :
    :
        Defendants.     :

---------------------------------------------------- X

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS LOUISIANA-PACIFIC CORPORATION AND HOME
DEPOT U.S.A., INC. AS TO ALL CLAIMS ASSERTED WITHIN THE COMPLAINT**

---

Radow Law Group, P.C.
1010 Northern Blvd., Suite 208
Great Neck, New York 11021
Attorneys for Plaintiff

On Brief:      Raymond D. Radow

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………..……..5

ARGUMENT………………………………………………………………….…....7

POINT I

      THE SUMMARY JUDGMENT STANDARD…………………………………7

POINT II

      BREACH OF EXPRESS WARRANTY……………………………………...7

          A.  Defendants HD and LP Made Statements
              Giving Rise to Express Warranties……………………………………8

          B.  Plaintiff Relied on the Express Warranties……………………………11

          C.  Defendants Materially Breached the Express Warranties……………12

          D.  Plaintiff Suffered Damages which Proximately Resulted
              from the Material Breach of the Express Warranties…………………14

POINT III

      FALSE ADVERTISING……………………………………………………..18

          A.  Defendants' Statements Regarding SmartSide Siding
              Had An Impact On Consumers At Large……………………………...19

          B.  Defendants' Statements Regarding SmartSide Siding
               Were Materially Deceptive And Misleading…………………………...20

          C.  Plaintiff Suffered Damages which Proximately Resulted from the
              materially deceptive and misleading statements of Defendants……….22

CONCLUSION……………………………………………………………………..25

# TABLE OF AUTHORITIES

CASES                                                                                  page

*Anderson Clayton & Co. v. Alanthus Corp.*, 91 AD 2d 985
(NY: Appellate Div., 2nd Dept. 1983)……………………………………………………..12

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 51 AD 3d 1114
(NY: Appellate Div., 3rd Dept. 2008)…………………………………………………….8

*Bader v. Siegel,* 238 AD 2d 272, (NY: Appellate Div., 1st Dept. 1997)………………….….8

*Barrett v. Black & Decker (U.S.) Inc.,* No. 06 Civ. 1970, 2008 WL 5170200………………8,14

*Bologna v. Allstate Ins. Co.,* 138 F. Supp. 2d 310, (E.D.N.Y. 2001)………………………..8,19

*CBS v. Ziff-Davis Publ. Co.,* 75 NY 2d 496 (N.Y. 1990)………………………………....11,12

*Clarke v. LR Systems,* 219 F. Supp. 2d 323 (E.D.N.Y. 2002)……………………………..15,23

*Danna Metro Heating Corp. v. Mobil Oil Corp.*, 203 AD 2d 231
(NY: Appellate Div., 2nd Dept. 1994)……………………………………………………12

*Derienzo v. Trek Bicycle Corp.*, 376 F. Supp.2d 537 (S.D.N.Y. 2005)…………………….....15,16

*Faryniarz v. Nike, Inc.,* 2002 WL 530997 (S.D.N.Y. April 8, 2002)………………………....15,23

*Frank Felix Assocs., Ltd. V. Austin Drugs, Inc.*, 111 F.3d 284 (2d Cir. 1997)………………12

*Friedman v. Medtronic, Inc.,* 42 AD 2d 185 (NY: Appellate Div., 2nd Dept. 1973)………….8

*Funk v. Kaiser-Frazer Sales Corp.*, 23 AD 2d 771,
(NY: Appellate Div., 2nd Dept. 1965)……………………………………………………..8

*Genesco Entertainment v. Koch,*593 F.Supp. 743 (S.D.N.Y.1984)…………………………..19

*Goldin v. Smith & Nephew, Inc.*, U.S. Dist. No. 12 Civ. 9217
(JPO) (S.D.N.Y. 2013)……………………………………………………………………….7

*Held v. Macy's, Inc.*, 2009 NY Slip Op 52189, (NY: Supreme Court 2009)…………………19

*Lipton v. Nature Co.,* 71 F.3d 464 (2d Cir.1995)……………………………………………...21

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F. 3d 171 (2d Cir. 2007)…………..12

*Metropolitan Coal Co. v. Howard*, 155 F.2d 780 (2d Cir. 1946)…………………………….6,17

*Niagara Mohawk Power Corp. v. Jones Chem, Inc.,* 315 F.3d 171 (2d Cir. 2003)……………7

*Oliveira v. Frito-Lay, Inc.,* 1997 WL 324042 (S.D.N.Y.1997)………………………………19

*O'Sullivan v. Duane Reade, Inc.,* 2010 NY Slip Op 50757,
(NY: Supreme Court 2010)……………………………………………………………8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E. 2d 741 (N.Y. 1995)………………………………………………………...21

*Paraco Gas Corp. v. AGA Gas, Inc.,* 253 F. Supp. 2d 563 (S.D.N.Y. 2003)………………..11

*People v. Gagnon Bus Co., Inc.*, 2010 NY Slip Op 33725,
(NY: Supreme Court 2010)……………………………………………………………..23

*Peralta v. Figueroa*, 2007 NY Slip Op 52184, (NY: Supreme Court 2007)………………...21

*Ramos v. Simon-Ro Corp.*, U.S. Dist. No. 06-CV-6105 (KMK) (S.D.N.Y. 2008)…………15,23

*Robinson v. Viacom Int'l, Inc.,* 1995 WL 417076, *12 (S.D.N.Y.1995)………………………..19

*Rogath v. Siebenmann,* 129 F. 3d 261 (2d Cir. 1997)…………………………………….....…11

*Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119,
8 L.Ed.2d 313 (1962)…………………………………………………………………….6,14,23

*Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)………………………..21

*Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54 (2d Cir.1996)……………………………15,17

*USHCP Real Estate Development, Inc. v. Mitrano*, 85 AD 3d 1719
(NY: Appellate Div., 4th Dept. 2011)……………………………………………………11

*Voss v. Black & Decker Mfg.*, 59 NY 2d 102  (N.U. 1983)…………………………………15,23

*Walker v. Sunnyside Corp.* U.S. Dist. Case No. 08-CV-2339
(FB) (CLP) (E.D.N.Y. 2013)…………………………………………………………..8,14

*Wills v. Amerada Hess Corp.*, 379 F. 3d 32 (2d Cir. 2004)………………………………15,17

**STATUTES**

FED. R. CIV. P. 56(a)……………………………………………………………………….7

N.Y.U.C.C. §2-313……………………………………………………………………...5,7,8

N.Y.G.B.L. §350……………………………………………………………………5,18,19

N.Y.G.B.L. §350-a…………………………………………………………………….5,18

**Preliminary Statement:**

Summary Judgment is inappropriate as sufficient evidence has been presented to support each element of Plaintiff's claims for breach of express warranty and false advertising under New York Uniform Commercial Code §2-313 and New York General Business Law §350 and §350-a respectively.

Defendant Louisiana-Pacific Corporation ("LP") recklessly and/or intentionally published false and dangerously misleading statements on its website about the nature and proper use of its SmartSide composite siding. These statements included that "LP SmartSide products work and cut just like traditional wood, taking nails and screws with ease." Consistently with their stated practice of having sales associates obtain information about the products they sell from manufacturers' websites in order to provide it to potential customers, Defendants, The Home Depot U.S.A., Inc., and The Home Depot Store #1202 (hereinafter "HD") through their employees, repeated these deceptive and misleading statements regarding SmartSide siding to Plaintiff Anthony Avola ("Mr. Avola") in order to induce him to purchase it in place of the traditional wood siding he had intended to buy.

In reality, these statements are demonstrably false. SmartSide siding is compressed and lacquered, and throughout any given piece contains areas of wildly varying density and hardness. In some places, the product is harder than almost any known wood on Earth, and should certainly not be worked in the same fashion as traditional wood siding (which is generally made of very soft woods, such as cedar and pine).  Mr. Avola, a master carpenter, was extremely familiar with the manner in which traditional wood siding is to be used, and, relying on the express guarantee of the Defendants that the SmartSide siding would behave in the same way, suffered a serious

injury, the complete loss of vision in one eye, as a direct result of this reliance.   Accordingly, Defendants' motion should be denied.

As Learned Hand said in *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946):

> A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.

Here, Mr. Avola had purchased the right to rely on HD and LP's representations regarding the nature and use of SmartSide siding, the same having been bargained for terms of the subject transaction. Therefore, HD and LP bear the burden of the grave consequences that befell Mr. Avola as a result of his reliance on said promises.  Notwithstanding, Defendants claim that without expert witness testimony, no causal nexus can be established between any breach of any express warranty or any materially deceptive statements made to Plaintiff regarding SmartSide siding and Plaintiff's injuries. This blanket assertion crumbles under more comprehensive scrutiny of the instant facts. As declared by the Supreme Court in *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962):

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation…"

Here, for the jury to comprehend the primary facts and draw correct conclusions regarding the causation of Mr. Avola's injury, they must simply understand that a nail hammered with sufficient force to penetrate a soft material, may instead ricochet with such force and velocity as would be impossible in the former case when struck with the same force into a harder, more dense material. To illustrate the simplicity of this concept, one must do no more

than visualize a bar of soap and a brick. They are of a similar shape and size, but the brick is obviously much harder and denser than the softer soap. If a nail were to be hammered into the soap it may either fall to the ground or penetrate the soap, but it will not ricochet back at the hammerer. Conversely, if the nail were to be struck into the brick with the same amount of force required to penetrate the soap, it would likely be insufficient to penetrate the brick, and if hammered with greater force, may very well ricochet back at the hammerer. This concept is easily understood without any special technical or scientific knowledge or expertise, and is well within the comprehension of the lay juror.

## ARGUMENT

### POINT I

### THE SUMMARY JUDGMENT STANDARD

Summary judgment is the appropriate remedy where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence and the inferences drawn therefrom are viewed in a light most favorable to the non-moving party. *Niagara Mohawk Power Corp. v. Jones Chem, Inc.,* 315 F.3d 171, 175 (2d Cir. 2003).

### POINT II
### BREACH OF EXPRESS WARRANTY

Viewing the evidence presented in the light most favorable to the Plaintiff, there is sufficient evidence to support a claim against each Defendant for breach of express warranty under N.Y. U.C.C. § 2-313. In order to establish a claim for the breach of an express warranty, Plaintiff must prove that 1) an express warranty existed, 2) Plaintiff relied on the express warranty, 3) Defendants breached the express warranty, and 4) Plaintiff incurred damages proximately caused by the breach of the express warranty. *Goldin v. Smith & Nephew, Inc.*, U.S.

Dist. No. 12 Civ. 9217 (JPO) (S.D.N.Y. 2013); *Walker v. Sunnyside Corp.* U.S. Dist. Case No. 08-CV-2339 (FB) (CLP) (E.D.N.Y. 2013); *Barrett v. Black & Decker (U.S.) Inc.,* No. 06 Civ. 1970, 2008 WL 5170200.

### A.  Defendants HD and LP Made Statements Giving Rise to Express Warranties

The statements about SmartSide siding published by LP on its website and reiterated by HD employee(s) to Mr. Avola gave rise to an express warranty.  N.Y. U.C.C. §2-313(1)(a) states that  "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."   To establish that said promise becomes part of the basis of the bargain, Plaintiff must show that "the natural tendency of [the promise] is to induce the buyer to purchase." *Friedman v. Medtronic, Inc.,* 42 AD 2d 185, 190 (NY: Appellate Div., 2nd Dept. 1973); *O'Sullivan v. Duane Reade, Inc.,* 2010 NY Slip Op 50757, (NY: Supreme Court 2010).

Furthermore, statements which are "mere puffery" cannot support a claim for breach of express warranty.  *Bologna v. Allstate Ins. Co.,* 138 F. Supp. 2d 310, 323 (E.D.N.Y. 2001).  In this context, "mere puffery" can be defined as "vague promises… incapable of being proven true or false." *Bader v. Siegel,* 238 AD 2d 272, (NY: Appellate Div., 1st Dept. 1997). Additionally, a buyer is not limited to express representations made in a contract, or at the time of a transaction, and may reasonably rely and base his express warranty claim upon "representations made by a seller through mass media advertisement." *Funk v. Kaiser-Frazer Sales Corp.*, 23 AD 2d 771, (NY: Appellate Div., 2nd Dept. 1965); *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 51 AD 3d 1114, 1116 (NY: Appellate Div., 3rd Dept. 2008).

Therefore, to establish the existence of an express warranty, Plaintiff must demonstrate that 1) Defendants made specific affirmations of fact relating to SmartSide siding, 2) the natural tendency of which was to induce Plaintiff to purchase the same and 3) said affirmations of fact are susceptible to being proven true or false. Here, Defendants HD and LP each made specific statements to Mr. Avola relating to SmartSide siding which gave rise to an express warranty. More particularly, Defendant LP made specific affirmations of fact regarding Smartside siding when it published the following statement on its website "LP SmartSide products work and cut just like traditional wood, taking nails and screws with ease." (Defendants' Ex. G). Defendants HD also made specific affirmations of fact regarding SmartSide siding when they, through the sales associate who sold the product to Mr. Avola, assured Mr. Avola that "[SmartSide] nails just like wood" and that "it works as easy as traditional wood siding." (Ex. A, Avola Aff.).  These statements were informed by the aforementioned statements published online by Defendant LP. The sales associate told Mr. Avola that he had "read information about the product online." (Ex. A, Avola Aff.). This is no surprise, as HD sales associates are trained to obtain information about products to provide to potential customers from product manufacturers' websites. (Defendants' Ex. B, Pretty Tr., pp. 38 - 40).  The sales associate also told Mr. Avola that he "could install [SmartSide] exactly the same way that [he] would install traditional wood siding like the T1-11." (Defendants' Ex. A, Avola Tr., p. 34).

Furthermore, the aforementioned statements of Defendants HD and LP each tended to induce plaintiff to purchase the same, and are therefore part of the basis of the bargain. Defendant LP's statement that "LP SmartSide products work and cut just like traditional wood, taking nails and screws with ease" and Defendants HD's statements that "[SmartSide] nails just like wood", "it works as easy as traditional wood siding", and Mr. Avola "could install [SmartSide] exactly the same way that [he] would install traditional wood siding like the T1-11"

each tended to induce Mr. Avola to purchase SmartSide. Mr. Avola had entered Home Depot with the intention of purchasing Plytanium 19/32 4x8 8 in. Oc Prem T1-11 Siding, a soft wood siding made of pine, a material with which he has significant experience working, and with which he is very familiar. (Defendants' Ex. A, Avola Tr., p. 34, Ex. A, Avola Aff.). However, the representations made about SmartSide were sufficient to convince him to change his course. In fact, in his affidavit, Mr. Avola stated that he "purchased the LP SmartSide Siding specifically because of the representation made to me that it could be installed in the same manner as the traditional wood siding that I am familiar with." (Ex. A, Avola Aff.).

Lastly, the aforementioned statements of Defendants LP and HD are susceptible to being proven true or false, and therefore, are not "mere puffery." The specific affirmations of fact regarding SmartSide siding made by Defendants LP and HD substantially amount to the fact that SmartSide can be worked and installed just like traditional wood siding, taking nails with comparable ease to traditional wood siding. These statements could thus be proven false by comparing SmartSide siding to traditional wood siding, and establishing that it is harder and denser than traditional wood siding, and that using the methods traditionally used to install and nail into traditional wood siding to install and nail into SmartSide siding can produce dangerous results which do not occur in the former scenario.  Thus, as the affirmations of fact made by Defendants HD and LP are susceptible to being proven true or false, they are not "mere puffery."

Therefore, as Defendants HD and LP made specific affirmations of fact relating to SmartSide siding, said affirmations of fact were part of the basis for the instant bargain, and said affirmations of fact are not "mere puffery", there is a material question of fact as to whether or not said statements gave rise to an express warranty.

## B.  Plaintiff Relied on the Express Warranties

Mr. Avola relied on the aforementioned express warranties as being part of the basis for the bargain to purchase SmartSide siding. For a breach of express warranty claim, the plaintiff must demonstrate that he relied on the express warranty as being a part of the bargain between the parties, not that he relied on the warranty being upheld. Essentially:

> "[t]his view of 'reliance'--ie, as requiring no more than reliance on the express warranty as being a part of the bargain between the parties--reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract. *CBS v. Ziff-Davis Publ. Co.,* 75 NY 2d 496, 503 (N.Y. 1990); *Rogath v. Siebenmann,* 129 F. 3d 261, 264 (2d Cir. 1997).

In other words, "The critical question is not whether the buyer believed in the truth of the warranted information,... but whether [it] believed [it] was purchasing the [seller's] promise [as to its truth]." *Paraco Gas Corp. v. AGA Gas, Inc.,* 253 F. Supp. 2d 563, 575 (S.D.N.Y. 2003).

As the Court of Appeals has explained, a warranty "is intended precisely to relieve the promisee of any duty to ascertain the [warranted] fact for [itself]; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past." *USHCP Real Estate Development, Inc. v. Mitrano,* 85 AD 3d 1719, 1720 (NY: Appellate Div., 4th Dept. 2011). Here, Mr. Avola relied on the express warranties as being part of the basis for the bargain. Defendant LP's statement that "LP SmartSide products work and cut just like traditional wood, taking nails and screws with ease" and Defendants HD's statements that "[SmartSide] nails just like wood", "it works as easy as traditional wood siding", and Mr. Avola ""could install [SmartSide] exactly the same way that [he] would install traditional wood siding like the T1-11" each tended to induce Mr. Avola to purchase SmartSide. Mr. Avola had entered Home Depot with the intention of purchasing Plytanium 19/32 4x8 8 in. Oc Prem T1-11 Siding, a soft wood siding made of pine, a material

with which he has significant experience working, and with which he is very familiar. (Defendants' Ex. A, Avola Tr., p. 34, Ex. A, Avola Aff.). However, the representations made about SmartSide were sufficient to convince him to purchase it as opposed to the T1-11 siding. In fact, in his affidavit, Mr. Avola stated that he "purchased the LP SmartSide Siding specifically because of the representation made to me that it could be installed in the same manner as the traditional wood siding that I am familiar with." (Ex. A, Avola Aff.).

Therefore, as Mr. Avola relied on the express warranty as being a part of his bargain with defendants, there is a material question of fact as to the reliance element of plaintiff's breach of express warranty claims.

### C. Defendants Materially Breached the Express Warranties

The aforementioned express warranties were materially breached by Defendants.

"Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach depends only on establishing that the warranty was breached" *Danna Metro Heating Corp. v. Mobil Oil Corp.*, 203 AD 2d 231, 233 (NY: Appellate Div., 2nd Dept. 1994) citing *CBS Inc. v. Ziff-Davis Publ. Co.*, supra, at 503-504.

A material breach "is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs., Ltd. V. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).

The issue of whether a party has materially breached "is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F. 3d 171 (2d Cir. 2007)**,** citing *Anderson Clayton & Co. v. Alanthus Corp.*, 91 AD 2d 985 (NY: Appellate Div., 2nd Dept. 1983).

Here, Defendants HD and LP expressly warranted that SmartSide can be worked and installed just like traditional wood siding, taking nails with comparable ease to traditional wood siding. These warranties were breached, as the aforementioned affirmations of fact regarding SmartSide siding are demonstrably false. SmartSide is far harder and denser than traditional wood siding. Traditional wood siding is generally made of soft woods, such as cedar or pine. (Ex. A, Avola Aff.). With the intention of working on his shed, Mr. Avola entered Home Depot to purchase Plytanium 19/32 4x8 8 in. Oc Prem T1-11 Siding (Defendants' Ex. A, Avola Tr., p. 33, Ex. A, Avola Aff.) made of Longleaf Pine (Ex. B). Longleaf Pine has a density in pounds per cubic foot of 39.83. (Ex. C)

For comparison, according to a product search on the Home Depot website, of the eight other wood sidings which Home Depot sells, five are made of White Cedar, (Ex. B) which has a density in pounds per cubic foot of 19.67 to 21.98. (Ex. C). However, LP Smartside Shed Panel Siding Material Safety Data Sheet states that the density range of the product is 28-70 pounds per cubic foot. (Defendants' Ex. D).  This suggests a dramatic variation in the density of the product, where at its least dense it is in the range of soft woods such as cedar and pine that are traditionally used for siding, whereas at its most dense it is as hard as some of the hardest hardwoods on the planet, such as the Ironwood, which ranges from 67.24 to 81.1 pounds per cubic feet. (Ex. C). Thus, SmartSide siding is, in spots, significantly harder and denser than traditional wood siding, and therefore does not take nails with the ease of traditional wood siding.  Furthermore, Mr. Avola used the same procedure he had used numerous times in the past on traditional wood siding, however, it resulted in a high velocity ricochet unlike anything he had ever seen when nailing into traditional wood siding. (Ex. A, Avola Aff.). Mr. Avola stated in his affidavit that "[i]n all of [his] prior experiences with traditional wood siding, nails have either penetrated into the wood, or, if not struck with sufficient force, reflected lightly and fell to the

ground. They never ricocheted back with such force and at such high speeds" as did the nail which struck him after ricocheting off of the SmartSide. (Ex. A, Avola Aff.).  As he is a master carpenter with years of experience, and he had never seen such a ricochet off of traditional wood siding, it is unlikely that SmartSide "works just like traditional wood siding."

SmartSide siding's extremely variable and, in some places excessive, hardness and density, as well as its inability to be worked properly in the same manner as traditional wood siding, with which Mr. Avola is extremely familiar, defeated the object of the express warranty, which was to assure Mr. Avola he could use the nailing and installation procedures with which he is familiar, and is thus a material breach. Therefore, as there is significant evidence that the specific affirmations of fact regarding SmartSide siding contained in the express warranties are false, there is a material question of fact as to whether Defendants materially breached the express warranties.

### D.   Plaintiff Suffered Damages which Proximately Resulted from the Material Breach of the Express Warranties

Plaintiff's damages proximately resulted from Defendants' material breach of the express warranty. To successfully establish a claim for the breach of an express warranty, "the plaintiff must show… that the warranty was relied upon to the plaintiff's detriment." *Walker v. Sunnyside Corp.* U.S. Dist. Case No. 08-CV-2339 (FB) (CLP) (E.D.N.Y. 2013); *Barrett v. Black & Decker (U.S.) Inc.,* No. 06 Civ. 1970, 2008 WL 5170200.

It has long been established by the Supreme Court of the United States that:

> [T]he general rule is… that expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under

investigation. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); see also *Wills v. Amerada Hess Corp.*, 379 F. 3d 32, 46 (2d Cir. 2004); *Ramos v. Simon-Ro Corp.*, U.S. Dist. No. 06-CV-6105 (KMK) (S.D.N.Y. 2008).

More specifically, it is also established that the causal link between some aspect of a product and an injury caused by that product does not necessarily require expert evidence. *Clarke v. LR Systems,* 219 F. Supp. 2d 323 (E.D.N.Y. 2002) citing *Faryniarz v. Nike, Inc.,* 2002 WL 530997, at *2 (S.D.N.Y. April 8, 2002). Instead, a jury may find proximate causation from its "consideration of the characteristics of the [product] and plaintiff's description of how the accident happened." *Voss v. Black & Decker Mfg.*, 59 NY 2d 102, 110-11 (N.U. 1983); *Ramos v. Simon-Ro Corp.*, U.S. Dist. No. 06-CV-6105 (KMK) (S.D.N.Y. 2008).

In *Ulfik v. Metro-North Commuter R.R.,* 77 F.3d 54 (2d Cir.1996) "[The Court] concluded that summary judgment was not warranted because no expert testimony was necessary to establish the causal nexus between inhaling paint fumes and the dizziness that allegedly led to plaintiff's fall." *Wills v. Amerada Hess Corp.,* supra, at 46. On the other hand, in *Wills v. Amerada Hess Corp.,* it was held that "the causal link between exposure to toxins and other behavior and squamous cell carcinoma is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation." *Id.* at 46.

To the contrary, Plaintiff claims that *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp.2d 537 (S.D.N.Y. 2005) stands for the proposition that "expert testimony is necessary to prove the essential element of causation between the product, the warranty... and the injury."

This claim is absurd. The case states that "breach of warranty--requires proof that the accident was caused by a failure of the [Bike's frame]. Since there are scientific and technical issues involved in this determination, expert proof is required." *Id.* at 551. In no way can this language be construed to impose a blanket requirement of expert testimony in order to establish

causation. In reality, just as expert testimony was required in *Wills* in order to assist the jury in determining whether a causal link existed between exposure to toxins and other behavior and squamous cell carcinoma, it was the specific facts of *Derienzo* which led the court to find expert testimony on the issue of causation was required. *Id.* at 551. This is because the causal link necessary to support the claims therein was between a number of alleged design and manufacturing defects and the failure of one particular bike frame to withstand the impact of one particular jump. *Id.* at 551. The court held that such a determination requires highly specialized scientific and technical knowledge beyond the common understanding of the lay juror. *Id.* at 551.

Here, no scientific or technical understanding outside of the knowledge of the lay juror is required to establish a causal link between Defendants' breaches of the instant express warranties and Mr. Avola's injuries. As discussed above, the express warranties were breached in that, in some spots, SmartSide siding is far harder and denser than traditional wood siding, and, as a result, does not take nails with ease, and cannot not be worked and installed in the same manner as traditional wood siding. Instead, as occurred when Mr. Avola tried to install SmartSide on his shed using the same procedure he had used many times before to install traditional wood siding, nails can ricochet dangerously off of Smartside siding back at the hammerer. (Ex. A, Avola Aff.). No expert testimony is required to establish the causal nexus between the excessive hardness and density of SmartSide siding and the injury to Mr. Avola's left eye. In order to establish such a causal link, Mr. Avola must demonstrate a causal connection between the hardness of the SmartSide siding and the ricochet, as well as between the ricochet and his injury. As it is uncontested that the ricocheting nail is the sole cause of the injury to Mr. Avola's eye, and his resulting loss of vision all that must be established is the causal link between the hardness and density of the SmartSide siding and the fact that the nail ricocheted. (Defendants' Ex. A, Avola Tr., pp. 20-22 and Ex. A, Avola Aff.). Understanding this causal link is well within

the capabilities of the lay juror. It is no more abstract to comprehend that a harder, denser siding is more likely to have a nail ricochet off of it than a softer, less dense siding, than it was for the fact finder in *Ulfik* to understand that inhaling paint fumes can lead to dizziness. By way of comparison, it requires a far more sophisticated scientific understanding to comprehend the link between exposure to toxins and other behavior and squamous cell carcinoma as in *Wills*.

Here, for the jury to comprehend the primary facts and draw correct conclusions regarding the causation of Mr. Avola's injury, they must simply understand that a nail hammered with sufficient force to penetrate a soft material may instead ricochet with such force and velocity as would be impossible in the former case when struck with the same force into a harder, more dense material. To illustrate the simplicity of this concept, one must do no more than visualize a bar of soap and a brick. They are of a similar shape and size, but the brick is obviously much harder and denser than the softer soap. If a nail were to be hammered into the soap it may either fall to the ground or penetrate the soap, but it will not ricochet back at the hammerer. Conversely, if the nail were to be struck into the brick with the same amount of force required to penetrate the soap, it would likely be insufficient to penetrate the brick, and may very well ricochet back at the hammerer. This concept is easily understood without any special technical or scientific knowledge or expertise, and is well within the comprehension of the lay juror.

As Learned Hand said in *Metropolitan Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946), when an express warranty is formed, the buyer purchases the right to be indemnified from the negative consequences of the seller's breach. Essentially, the buyer has purchased the right to act under the assumption that the goods comported with the terms of the express warranty. Here, Mr. Avola did just that, and operated under the assumption that, based on his vast experience with traditional wood siding, a nail would not ricochet off of the siding at a high velocity when

17

hammered. (Defendants' Ex. A, Avola Tr., p. 111 and Ex. A, Avola Aff.).Thus Mr. Avola, in reliance on the express warranties, bent down to align a proper strike of his hammer, with his eye exposed to a ricochet that would not have occurred but for the noncompliance of the siding with the terms of the express warranties. Unfortunately, the SmartSide siding did not comport with the terms of the express warranties, and, as a result, such a ricochet did occur. Therefore, as the causal link between the nonconforming physical properties of SmartSide siding and the injury to Mr. Avola's eye can be established without expert testimony, there exists a material question of fact as to whether Plaintiff's damages proximately resulted from Defendants' material breach of the express warranty.

As there is sufficient evidence to establish a material question of fact regarding the existence of express warranties between Defendants and Plaintiff, Plaintiff's reliance on said express warranties, Defendants' breaches of said express warranties, and proximate causation between said breach and Plaintiff's injury, summary judgment is inappropriate and should not be granted.

## POINTIII

## FALSE ADVERTISING

Viewing the facts in the light most favorable to the Plaintiff, there is sufficient evidence to support a claim against each Defendant for false advertising under New York General Business Law §350 and §350-a. Under N.Y.G.B.L. §350. "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y.G.B.L. §350-a goes on to define "false advertising" as:

> advertising, including labeling, of  a  commodity… if such advertising is misleading in a material respect. In determining  whether any  advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word,  design, device,  sound  or any

combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity… to which the advertising relates under the conditions prescribed  in  said advertisement, or under such conditions as are customary or usual.

For a claim under N.Y.G.B.L. §350, "[a] plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury. *Held v. Macy's, Inc.*, 2009 NY Slip Op 52189, (NY: Supreme Court 2009); *Andre Strishak & Associates, PC v. Hewlett Packard Co.,* 300 AD 2d 608, 609 (NY: Appellate Div., 2nd Dept. 2002).

## A.  Defendants' Statements Regarding SmartSide Siding Had An Impact On Consumers At Large

Defendants' Statements Regarding SmartSide siding, which were published on Defendant LP's website and used by Defendants HD to educate sales associates and provide information about SmartSide Siding to potential customers, have had an impact on consumers at large.

In *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001), it is established that:

> Although section 350 creates a private right of action for injury suffered as a result of false advertising, an individual has standing to sue only if he "alleges injury in [his] role as a consumer that affects the public interest." *Oliveira v. Frito-Lay, Inc.,* 1997 WL 324042, at *7 (S.D.N.Y.1997). "Private transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of," a claim under section 350. *Robinson v. Viacom Int'l, Inc.,* 1995 WL 417076, *12 (S.D.N.Y.1995) (quoting *Genesco Entertainment v. Koch,* 593 F.Supp. 743, 752 (S.D.N.Y.1984))

Here, given the severity of the injury he suffered, as well as the high volume of SmartSide siding sales nationwide, Mr. Avola alleges that he suffered an injury in his role as a consumer, citing the public interest in consumer safety.  Defendant LP published the subject statements on its website, stating that "LP SmartSide products work and cut just like traditional

wood, taking nails and screws with ease." (Defendants' Ex. G). LP is a major manufacturer, and sells SmartSide siding in large volumes to distributors such as Defendant HD.

When Mr. Avola purchased the SmartSide siding from Defendants HD, a HD sales associate had made statements to him with substantially identical content to the subject statements published by Defendant LP. (Ex. A, Avola Aff.).  Furthermore, the sales associate told Mr. Avola that he had "read information about the product online." (Ex. A, Avola Aff.). This is no surprise, as HD sales associates are trained to obtain information about products to provide to potential customers from product manufacturers' websites. (Defendants' Ex. B, Pretty Tr., pp. 38 - 40). Therefore, it can be concluded that Defendants HD are repeating the subject statements, which are published on Defendant LP's website, to potential customers in an effort to promote sales of SmartSide siding.

Therefore, as the subject transaction, in which Mr. Avola purchased SmartSide siding manufactured by Defendant LP from Defendants HD, was one of many such public, recurring transactions, and Defendants' Statements Regarding SmartSide siding are so widely published by Defendants, there is a material question of fact as to whether said statements, which were published on Defendant LP's website and used by Defendants HD to educate sales associates and provide information about SmartSide Siding to potential customers, have had an impact on consumers at large.

**B.  Defendants' Statements Regarding SmartSide Siding Were Materially Deceptive And Misleading**

Defendant LP's statements about its SmartSide siding published on its website and repeated to potential customers, including Plaintiff, by Defendants HD are materially deceptive and misleading. To determine if a statement is materially deceptive and misleading, "the test is

whether such [statement] is likely to mislead a reasonable consumer acting reasonably under the circumstances" *Andre Strishak & Associates, PC v. Hewlett Packard Co.,* 300 AD 2d 608, 609 (NY: Appellate Div., 2nd Dept. 2002); *Peralta v. Figueroa*, 2007 NY Slip Op 52184, (NY: Supreme Court 2007); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E. 2d 741, 26 (N.Y. 1995).

However, a statement will not be found to be materially deceptive if it is mere puffery. "This Court has had little occasion to explore the concept of puffery in the false advertising context. In *Lipton v. Nature Co.,* 71 F.3d 464 (2d Cir.1995), the one case where we discussed the subject in some depth, we characterized puffery as '[s]ubjective claims about products, which cannot be proven either true or false.'" *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007). Here, Defendants' representations that SmartSide can be worked and installed just like traditional wood siding, taking nails with comparable ease to traditional wood siding, are likely to mislead a reasonable consumer acting reasonably under the circumstances, just as they misled Mr. Avola, a master carpenter with over fifty years of experience. (Ex. A, Avola Aff.).   After hearing the subject deceptive statements, Mr. Avola's reasonable interpretation was that he would be able to safely install SmartSide siding with the same nailing and installing procedures he was accustomed to using on traditional wood siding. (Ex. A, Avola Aff.).

Unfortunately, as discussed above, the aforementioned statements regarding SmartSide siding are demonstrably false. To wit, SmartSide is far harder and denser than traditional wood siding, and therefore does not take nails with the ease of traditional wood siding.  Furthermore, Mr. Avola used the same procedure he had used numerous times in the past on traditional wood siding, however, it resulted in a high velocity ricochet unlike anything he had ever seen when

nailing into traditional wood siding. (Ex. A, Avola Aff.). As he is a master carpenter with years of experience, and he had never seen such a ricochet off of traditional wood siding, it is unlikely that SmartSide "works just like traditional wood siding."

Lastly, the aforementioned statements of Defendants LP and HD are susceptible to being proven true or false, and therefore, are not "mere puffery." The specific materially deceptive statements regarding SmartSide siding made by Defendants LP and HD substantially amount to claims that SmartSide can be worked and installed just like traditional wood siding, taking nails with comparable ease to traditional wood siding. These claims could thus be proven false by comparing SmartSide siding to traditional wood siding, and establishing that it is harder and denser than traditional wood siding, and that using the methods traditionally used to install and nail into traditional wood siding to install and nail into SmartSide siding can produce dangerous results which do not occur in the former scenario.  Thus, as the affirmations of fact made by Defendants HD and LP are susceptible to being proven false, they are not "mere puffery."

Therefore, as there is sufficient evidence that a reasonable consumer behaving reasonably under the circumstances would be deceived by Defendant LP's statements about its SmartSide Siding published on its website and repeated to potential customers, including Plaintiff, by Defendants HD, there is a material question of fact as to whether said statements are materially deceptive and misleading.

### C.  Plaintiff Suffered Damages which Proximately Resulted from the materially deceptive and misleading statements of Defendants

Plaintiff's damages proximately resulted from Defendants' materially deceptive and misleading statements.  To establish the necessary element of causation in a claim for false advertising, a plaintiff must provide "proof of a causal connection between some injury to

plaintiffs and some misrepresentation made by defendants" *People v. Gagnon Bus Co., Inc.*, 2010 NY Slip Op 33725, (NY: Supreme Court 2010);

It has long been established by the Supreme Court of the United States that "expert testimony… is unnecessary… "if all the primary facts can be accurately… described to the jury, and if they…are as capable of … drawing correct conclusions from them as are witnesses possessed of special or peculiar training…" *Salem* supra. More specifically, it is also established that the causal link between some aspect of a product and an injury caused by that product does not necessarily require expert evidence. *Clarke v. LR Systems,* 219 F. Supp. 2d 323 (E.D.N.Y. 2002) citing *Faryniarz v. Nike, Inc.,* 2002 WL 530997, at *2 (S.D.N.Y. April 8, 2002). Instead, a jury may find proximate causation from its "consideration of the characteristics of the [product] and plaintiff's description of how the accident happened." *Voss v. Black & Decker Mfg.*, 59 NY 2d 102, 110-11 (N.U. 1983); *Ramos v. Simon-Ro Corp.*, U.S. Dist. No. 06-CV-6105 (KMK) (S.D.N.Y. 2008).

Here, as Defendants' materially deceptive statements regarding SmartSide siding are specific claims as to the physical properties and characteristics of the product, establishing a causal connection between said deceptive statements and Plaintiff's injury is synonymous with establishing a causal connection between the nonconforming traits of the siding and Plaintiff's injury. As discussed above, Defendants' statements regarding SmartSide siding were materially deceptive in that, in some spots, SmartSide siding is far harder and denser than traditional wood siding, and, as a result, does not take  nails with ease, and cannot not be worked and installed in the same manner as traditional wood siding. Instead, as occurred when Mr. Avola tried to install SmartSide on his shed using the same procedure he had used many times before to install

traditional wood siding, nails can ricochet dangerously off of Smartside siding back at the hammerer. (Ex. A, Avola Aff.).

No expert testimony is required to establish the causal nexus between the excessive hardness and density of SmartSide siding and the injury to Mr. Avola's left eye. In order to establish such a causal link, Mr. Avola must demonstrate a causal connection between the hardness of the SmartSide siding and the ricochet, as well as between the ricochet and his injury. As it is uncontested that the ricocheting nail is the sole cause of the injury to Mr. Avola's eye, and his resulting loss of vision, all that must be established is the causal link between the hardness and density of the SmartSide siding and the fact that the nail ricocheted. (Defendants' Ex. A, Avola Tr., pp. 20-22 and Ex. A, Avola Aff.). As aforesaid, understanding this causal link is well within the capabilities of the lay juror.

Here, for the jury to comprehend the primary facts and draw correct conclusions regarding the causation of Mr. Avola's injury, they must simply understand that a nail hammered with sufficient force to penetrate a soft material may instead ricochet with such force and velocity as would be impossible in the former case when struck with the same force into a harder, more dense material.

Therefore, as the causal link between the nonconforming physical properties of SmartSide siding and the injury to Mr. Avola's eye can be established without expert testimony, there exists a material question of fact as to whether Plaintiff's damages proximately resulted from Defendants' materially deceptive and misleading statements.   As there is sufficient evidence to establish a material question of fact regarding whether Defendants' advertising had an impact on consumers at large, whether said advertising contained materially deceptive and

misleading statements, and proximate causation between said statements and Plaintiff's injury, summary judgment is inappropriate and should not be granted.

## CONCLUSION

Defendants claim that without expert testimony, Plaintiffs cannot support their claim for breach of express warranty or false advertisement. However, no such general requirement exists. In fact, it has long been held that where the common person is as capable as one with specialized knowledge or training of understanding the facts of a case and drawing correct conclusions, expert testimony is not required. In this matter, especially considering the aforementioned facts in the context of our modern day "Do-It-Yourself" culture, no complex scientific or technical understanding is required in order for the common person to understand the causal link between the fact that the SmartSide siding was far harder than suggested by Defendants and the fact that, when hammered by a master carpenter in the manner in which he was led to believe was safe and proper, a nail ricocheted off of the siding and back into that carpenter's eye. Sufficient evidence having been presented to raise a material question of fact with respect to each element of Plaintiffs' breach of express warranty and false advertising claims, summary judgment is thus inappropriate, and Plaintiffs Anthony Avola and Josephine Avola respectfully request that the Court deny the instant motion.

Dated: July 8, 2013
      Great Neck, NY

                                            Respectfully submitted,
                                            RADOW LAW GROUP, P.C.

                                            By:_____
                                              Raymond D. Radow, Esq. (2855)

To: Andrew J. Scholz, Esq. (Via ECF)          1010 Northern Blvd., Suite 208
Goldberg Segalla, LLP                          Great Neck, New York 11021
11 Martine Avenue, Suite 750               (516) 338-7800
White Plains, NY 10606                      *Attorneys for Plaintiffs*
(914) 798-5400
*Attorney for Defendants*